**CHECKER TAXI COMPANY, INC.**

v.

**CHECKER MOTOR SALES CORPORA-TION and Checker Motors Corporation.**

Civ. A. No. 68–222–C.

United States District Court,
D. Massachusetts.

June 4, 1974.

Thomas B. Arnold, Epstein & Salloway, Boston, Mass., for plaintiff.

Charles F. Barrett, Nutter, McClennen & Fish, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

CAFFREY, Chief Judge.

This matter came on before the Court for hearing of objections filed by both parties to the report of the Special Master. The Special Master was appointed in this, a civil action in the nature of

breach of warranty brought by the owner of a fleet of some 268 taxi cabs which operate in Boston against the manufacturer of the cabs with reference to 152 vehicles used in plaintiff's business.

The case concerns four separate orders placed by plaintiff with defendant for a total of 152 Checker taxi cabs manufactured in 1964 and 1965 by Checker Motors and sold by Checker Sales. 35 of the vehicles were 1964 models, 71 were 1965 models, and 46 were 1966 models. Plaintiff alleges that defendants, as sellers of goods, should, under the provisions of the Uniform Commercial Code, be held to have made and breached implied warranties of merchantability and fitness for a particular purpose. Plaintiff further alleges that the cabs in issue were defective in design, manufacture and assembly, were not of a merchantable quality, and were not fit for their intended use as taxi cabs.

Plaintiff's complaint filed on March 11, 1968 claims that plaintiff has spent considerable sums of money in repairing defective taxis, and further that plaintiff has lost considerable sums due to the loss of the use of these vehicles while they were out of service for repairs caused by the alleged breach of warranty. The case was referred to the Special Master pursuant to Rule 53 to make findings of fact and to draw conclusions of law. The Special Master conducted 66 days of hearings spread over almost two calendar years, and filed a report herein on November 2, 1973. A hearing on the objections was held by this Court on January 28, 1974.

Despite the amount of time already invested in this case by counsel, the Master, and the Court, it would appear that ultimate resolution of this controversy is not immediately at hand. On the basis of the objections and the argument of counsel, this Court is of the opinion that the matter must be recommitted to the Master for further findings and rulings. However, the recommittal will be relatively narrow in scope and will not require the Special Master to

pick all the nits counsel seek to visit upon him nor will the Court resubmit to the Master various findings favorable to one side or the other which in a burst of litigiousness were objected to by the counsel in whose favor the Master found or ruled! Counsel have filed 215 pages of legal memoranda addressed towards the alleged deficiencies in the Master's 44 page report. While this snow storm of paper is some evidence that there may be deficiencies in the Master's report, it is stronger evidence of overzealousness by counsel.

It should be noted that many of the objections of the parties hereto refer to portions of the "record" which portions consist of several filing cabinets full of unorganized documents, exhibits, and partial transcripts of the Master's hearing, all of which are lodged in the basement of the Clerk's office. In view of the foregoing, this Court deems it appropriate to limit its action in this case to a resolution of a few controlling issues and not to explore the myriad of relatively immaterial and trivial points urged upon it. Having in mind that this case was filed in 1968 and that the parties have had 66 days in Court already before the Master, the ultimate termination of this litigation seems to be a matter in which counsel and the parties appear to have no interest, consequently, any expedition thereof will obviously have to come from the Court.

In the execution of the sales transactions defendants routinely used a document called "Customer's Order and Invoice." This was a standard order form which bore the name Checker Motor Sales Corporation, as well as the legend "Subsidiary of Checker Motor Corporation." The front side of this form contained a space for a description of the vehicles ordered and the sales price. Beneath this space there are five paragraphs of text which contain less than 600 words. The fourth of these five paragraphs provides:

"The seller warrants the new motor vehicle(s) purchased hereunder to be free from defects in material and

workmanship under normal use and service, its obligation under this warranty being limited to making good at the factory of the manufacturer any part or parts thereof including all equipment and trade accessories (except tires) supplied by the manufacturer, which shall, within 90 days after making delivery of such motor vehicle(s) to the original purchaser or before such motor vehicle(s) shall have been driven 4,000 miles, whichever event shall first occur, be returned to the seller with transportation charges prepaid, and which the examination of the seller shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of the seller, and the seller neither assumes nor authorizes any person to assume for it any liability in connection with the sale of motor vehicle(s). This warranty shall not apply to any motor vehicle(s) which shall have been repaired or altered outside an authorized Checker service station in any way so as, in the judgment of the seller, to affect its stability or reliability, or which has been subject to misuse, negligence or accidents."

The proper construction of this quoted language can be critical to the outcome of this case because the paragraph is susceptible to a construction as (1) an attempt by defendant to exclude the implied warranties of merchantability and fitness for a particular purpose or (2) as a limitation of the remedies available as a result of breach of said warranty, assuming the warranty not to have been excluded.

The Master found that the requirements of Massachusetts General Laws, ch. 106, § 2–316(2) were not complied with and, consequently, that the quoted paragraph did not exclude the implied warranties. The Master found that the language was not "conspicuous" enough to exclude the warranty of fitness for a particular purpose.

Massachusetts General Laws, ch. 106, § 1–201(10) defines conspicuous as follows:

"(10) 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicious' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous'. Whether a term or clause is 'conspicuous' or not is for decision by the court."

█ Because the Master's report does not disclose the basis of the Master's finding that a reasonable commercial buyer would not have noticed one of these five paragraphs on an order form used for more than 10 years in transactions amounting to almost one-half a million dollars, I remand this matter to the Master for a ruling setting forth the basis in law and in fact for this conclusion of the Master. A further purpose of the remand will be in order for the Master to make a ruling as to whether or not the language in question was effective as a *limitation* on the remedies available for breach of warranty, a point not discussed in the Master's report. The Master's attention is invited to Massachusetts General Laws, ch. 106, § 2–316(4) which provides:

"(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (sections 2–718 and 2–719)."

This section makes it abundantly clear that the question of exclusion of implied warranties is a separate question from that of limitation of implied warranties. Consequently, separate rulings should have been made on both legal issues. It should further be noted that the Uniform Commercial Code appears not to require conspicuousness as a condition

**1000**

precedent to the limitation of remedies for breach of warranty even though the Uniform Commercial Code does require conspicuousness as a condition precedent to the exclusion of remedies.

█ So much of the Master's report as found no privity between Checker Motors and plaintiff and no principal-agent relationship between Checker Motors and Checker Sales is confirmed hereby, and, accordingly, the remand hereof will be concerned with only the liability, if any, of Checker Sales to plaintiff. The fact that the Massachusetts Legislature abolished the requirement of privity of contract in actions for breach of warranty in 1971 does not avail the plaintiff herein, since the statute does not have retroactive application.

The Court reserves judgment on other claims of the parties going to such items as defective motor mounts, defective brake linings, frame problems, cowl bracket failures, etc., until after the Master files an additional report on the basis of this remand.