Hillsborough
No. 83-228

XEROX CORPORATION

v.

L. ALAN HAWKES
d/b/a MIN–A–PRINT

March 2, 1984

612

*Jay M. Niederman*, of Manchester, by brief and orally, for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Eric P. Bernard* on the brief and orally), for the defendant.

KING, C.J. In this case we address the validity of contractual provisions contained in a service agreement between a lessor and a lessee. We hold, first, that the language of the agreement falls within the scope of Article 2 of the Uniform Commercial Code; second, that there is no evidence indicating that the clauses in the agreement which exclude incidental and consequential damages are unconscionable; third, that the agreement's disclaimer language is sufficiently conspicuous to meet the requirements of the Uniform Commercial Code; and, fourth, that the agreement's repair or replacement remedy does not "fail of its essential purpose" under RSA 382-A:2-719(2). For the foregoing reasons, we affirm the trial

court's dismissal of the defendant's counterclaim for incidental and consequential damages.

In July 1977, the defendant L. Alan Hawkes d/b/a Min-A-Print leased a Model 2400 copying machine from the plaintiff Xerox Corporation (Xerox) for use in his printing and copying business, and both parties entered into a "service agreement." As a result of problems Hawkes experienced with the Model 2400 copier, Xerox replaced the copier with a Model 7000 copier in December 1977, and a new service agreement was signed. Hawkes continued to experience problems with the replacement copier, and on February 27, 1978, he demanded that Xerox remove the Model 7000 copier from his place of business. Xerox complied with his request on March 16, 1978.

Xerox filed suit in Manchester District Court in May 1979, seeking $1,016.52 in unpaid rental fees. Hawkes counterclaimed in the district court in June 1979, for $30,000 in lost profits, lost business and incidental and consequential damages. Subsequently, both the claim and the counterclaim were considered together in superior court. *See* Super. Ct. R. 27.

On January 17, 1983, Xerox filed a summary judgment motion contending that the disclaimer language on the reverse side of the service agreement with Hawkes barred the counterclaim for incidental and consequential damages. The Superior Court (*Bean*, J.) initially denied the motion on March 18, 1983. However, the court, *sua sponte*, vacated its order on March 25, 1983, and granted summary judgment. The court's ruling did not result in a dismissal of the counterclaim in its entirety. The court order dismissed only that portion of the counterclaim which sought incidental and consequential damages. Hawkes' motion for reconsideration was subsequently denied and he appeals. We affirm and remand.

The two service agreements at issue contain warranty and remedy limitations. The pertinent language in the Model 2400 contract states:

> "Xerox Shall:
>
> . . . .
>
> Warrant that the equipment will be free of defects in material and workmanship; however, Xerox' sole obligation shall be to repair or replace, at its option, Equipment found to be defective under this warranty. OTHER THAN THE OBLIGATION OF XEROX EXPRESSLY SET FORTH HEREIN, XEROX DISCLAIMS ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WAR-

RANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE FOREGOING CONSTITUTES XEROX' SOLE OBLIGATION WITH RESPECT TO DAMAGES, INCIDENTAL OR CONSEQUENTIAL, RESULTING FROM THE USE OR PERFORMANCE OF THE EQUIPMENT."

Similar language appears in the contract for the Model 7000 copier:

"Xerox Shall:

. . . .

Warrant that its equipment will be of merchantable quality and free of defects in material and workmanship; and repair or replace equipment which is found to be defective under this warranty. (THIS REPRESENTS XEROX' SOLE OBLIGATION WITH RESPECT TO DAMAGE, WHETHER DIRECT, INCIDENTAL OR CONSEQUENTIAL, RESULTING FROM THE USE OR PERFORMANCE OF THE EQUIPMENT)."

■ Although a "lease" and not a "sale" was contemplated by the parties to the service agreements, the Uniform Commercial Code still applies to the warranty provisions of the two service agreements. RSA 382-A:2-102, which defines the scope of Article 2 of the Uniform Commercial Code, does not refer to "sales," but instead to "transactions in goods." Further, Professor Anderson, in his treatise on the Uniform Commercial Code, states:

"Although UCC Article 2 is designed to supersede the former Sales Act and to relate to the sale of goods, the Article is not limited to 'sales,' which it defines as the transfer of title to goods, but instead is expressly made applicable to 'transactions in goods,' and UCC § 2-202 omits any reference to sales.

The phrase 'transaction in goods' is broader than 'sale'.

The use of the term 'transaction' rather than 'sale' in UCC § 2-102 makes it clear that Article 2 is not to be confined merely to those transactions in which there is a 'sale,' that is, a transfer of title. Conversely, Article 2 may extend by analogy to non-sale transactions, such as equipment leasing."

1 R. ANDERSON, UNIFORM COMMERCIAL CODE, § 2-103:4, at 500-01 (1981).

In addition, in *Sawyer, Etc. v. Pioneer Leasing Corp.*, 244 Ark. 943, 955-57, 428 S.W.2d 46, 53-54 (1968), the court held that the

Uniform Commercial Code provisions regarding warranties and their disclaimers are applicable to a lease of an ice machine. Similarly, in *Owens v. Patent Scaffolding—Div. of Harsco*, 354 N.Y.S.2d 778, 784 (Sup. Ct. 1974), *rev'd on other grounds*, 376 N.Y.S.2d 948 (App. Div. 1975), the court stated that "[t]o allow lease-sale distinctions to subject a supplier-lessor to different liabilities than a supplier-seller preserves distinctions without differences." *See also Knox v. North American Car Corp.*, 80 Ill. App. 3d 683, 399 N.E.2d 1355 (1980).

 Under the Uniform Commercial Code, express warranties can be created by promises or affirmations of fact which relate to the goods and become part of the contractual bargain. RSA 382–A:2–313(1)(a). RSA 382–A:2–314 generally provides that a seller impliedly warrants that his goods are merchantable or generally fit for the "ordinary purposes" for which the goods are used, unless the seller validly excludes or modifies the warranty. Also, an implied warranty of fitness for a particular purpose can be made when the seller knows that the buyer is relying upon the seller's expertise in selecting goods to fulfill the buyer's particular requirements. RSA 382–A:2–315. Unless the warranties are disclaimed or limited, a breach of any of these warranties may give rise to a cause of action for incidental or consequential damages. *See* RSA 382–A:2–714.

Consequential damages are defined in RSA 382–A:2–715(2) to include:

> "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty."

RSA 382–A:2–715(1) defines incidental damages as:

> "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."

 However, each of the warranties outlined above can be limited or totally disclaimed in one of two ways. First, a warranty may be totally disclaimed under RSA 382–A:2–316(2):

> "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention mer-

chantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'"

Second, even if there is not a complete disclaimer, under RSA 382–A:2–719(1), the parties may agree to limit the buyer's remedies in the event of a breach:

"Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and . . .

. . . .

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Accordingly, under section 2–719, a seller may limit his obligation to repairing or replacing non-conforming goods under subsection (1)(a) and limit consequential damages under subsection (3).

■■ Contract language containing limitations upon consequential and incidental damages has been upheld by numerous courts. This has often been true when, as here, the transaction was between commercial entities and the disclaimer was not prima facie unconscionable. *Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 458 (S.D.N.Y. 1976); *Cyclops Corporation v. Home Insurance Company*, 389 F. Supp. 476, 482 (W.D. Pa), *aff'd*, 523 F.2d 1050 (3d Cir. 1975); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F. Supp. 1300, 1308 (S.D.N.Y. 1970). Disclaimer language in contracts has also been construed to justify dismissal of claims for negligent failure to repair, where the complaint is, in fact, premised upon breach of contract and warranty. *See Investors*

*Premium Corp. v. Burroughs Corp.*, 389 F. Supp. 39, 45–46 (D.S.C. 1974).

■■■■ RSA 382–A:2–719(3) expressly permits exclusion of consequential damages, unless the exclusion is unconscionable. It is necessary for the buyer to produce evidence showing that there is a fact issue of unconscionability. *See Cyclops Corporation v. Home Insurance Company supra; County Asphalt, Inc. v. Lewis Welding & Engineering Corp., supra* at 1309. Here, the allegations do not provide the basis for a ruling that a material issue may exist regarding possible unconscionability of the clauses in dispute.

Hawkes contends that the disclaimer language in the service agreements does not satisfy the Uniform Commercial Code requirements of conspicuousness. We disagree.

■■■■ RSA 382–A:2–316(2) requires that a written exclusion or modification of the warranties of merchantability or fitness must be "conspicuous." The Code does not impose the conspicuous requirement upon those contract provisions which limit the remedies of buyers in the case of a breach. *See* RSA 382–A:2–719. The independent nature of sections 2–316 and 2–719 was recognized by a federal district court in *Checker Taxi Co., Inc. v. Checker Motor Sales Corp.*, 376 F. Supp. 997, 999–1000 (D. Mass. 1974). In *Checker Taxi,* the court opined that "the Uniform Commercial Code appears not to require conspicuousness as a condition precedent to the limitation of remedies for breach of warranty even though the Uniform Commercial Code does require conspicuousness as a condition precedent to the exclusion of remedies." *Id.*

■■■■ Here, assuming, *arguendo*, that the Code's conspicuous requirement does apply to the pertinent disclaimer language, the disclaimer is referred to specifically on the face sheet of the service agreements by the phrase "subject to the terms and conditions contained herein, on the reverse side and in Xerox Corporation's published . . . Price List." A reference on the face-sheet of a contract to the terms and conditions on the reverse side of the face-sheet has been found to meet the Code's requirement of conspicuousness. *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039, 1051 (Okla. App. 1980); *Thermo King Corp. v. Strick Corp.*, 467 F. Supp. 75, 78 (W.D. Pa.), *aff'd*, 609 F.2d 503 (3d Cir. 1979).

■■■■ The disclaimer language appears on the reverse side of each service agreement and is the only capitalized printing on that page. The disclaimer appears under the heading "Xerox Shall," which is similar to the heading "Manufacturer Warranty," approved by the federal district court in *Thermo King.* Similarly, each price list,

referred to on the face of the service agreement, itself has language referring to the terms and conditions on the reverse side of the service agreement. Also, the reverse side of each price list has similar language of disclaimer printed in the only all-capitalized text on the page. We hold that the disclaimers in question were sufficiently conspicuous.

The defendant also argues that summary judgment should not have been granted because the factual issue remained whether the circumstances of the case caused the remedy contained in the service agreement "to fail of its essential purpose," RSA 382-A:2-719(2), and therefore compel the award of damages. On the merits of this issue, the defendant contends that Xerox' inability to repair the equipment satisfactorily compels a finding that the contractual remedy failed.

Although the defendant's argument raises a question of first impression in this jurisdiction, other jurisdictions have addressed it fully. In *Dow Corning Corporation v. Capital Aviation, Inc.*, 411 F.2d 622 (7th Cir. 1969), a contract for the sale of a passenger plane contained language limiting damages, in the event of non-delivery, to cancellation of the contract and refund of the deposit. The seller was not able to deliver the plane despite good faith efforts and the buyer sued, alleging consequential damages. *Id.* The buyer claimed that the damage limitations were unenforceable since the limitations deprived him of the benefit of the bargain he entered into and, thus, ran afoul of the "failure of essential purpose" language of section 2-719(2). *Id.* The Seventh Circuit disallowed the buyer's claim, stating that:

> "Section 2-719 of the Code demonstrates that there are permissible limitations as to remedies. Section 2-719(1)(a) provides that damages may be limited 'as by limiting the buyer's remedies to return of the goods and repayment of the price. . . .' *It is obvious that this remedy deprives the buyer of the benefit of his bargain . . . but it is nonetheless deemed permissible.*"

*Id.* at 626 (emphasis added). *See also S. M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978). We are convinced of the cogency of such an approach. Therefore, we find the defendant's arguments meritless.

Also, other courts, interpreting the effect of the "failure of essential purpose" Code provision in cases where there is proof of an inability to repair non-conforming goods, have not invalidated contractual limitations on incidental and consequential damages. Those

portions of a contract disallowing incidental and consequential damages are considered separate and distinct from the language dealing with repair and replacement. Such damage limitations survive even if the contractual provision limiting the buyer's remedies to repair or replacement is judicially stricken. *See Polycon Industries, Inc. v. Hercules, Inc.*, 471 F. Supp. 1316, 1324–25 (E.D. Wis. 1979); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F. Supp. 1300, 1309 (S.D.N.Y. 1970); *S. M. Wilson & Company v. Smith Intern., Inc.*, 587 F.2d at 1375. In *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, the federal district court held that a consequential damage limitation would not be affected by a finding of failure of essential purpose due to inability to repair or replace. *Supra* at 1309.

Consequently, we agree with the trial court that the plaintiff sustained its burden of proof and was entitled to summary judgment pursuant to RSA 491:8-a, III. Summary judgment has been repeatedly approved by this court to save time, effort, and expense, by allowing an immediate final judgment in those cases where there is no genuine issue of material fact requiring a formal trial. *See Settle v. Keene Savings Bank*, 120 N.H. 827, 829–30, 423 A.2d 986, 987 (1980). As we stated in *Community Oil Co. v. Welch*, 105 N.H. 320, 321, 199 A.2d 107, 108 (1964), "[t]he mission of the summary judgment procedure is to 'pierce the pleadings and assess the proof' . . . in order to determine if there is a genuine issue of material fact requiring a formal trial of the action." *Id.* (citation omitted).

We have found no such genuine issue of material fact here.

*Affirmed; remanded.*

All concurred.