# United States Court of Appeals
## For the First Circuit

No. 13-2240

BAE SYSTEMS INFORMATION AND ELECTRONICS SYSTEMS INTEGRATION, INC.,

Plaintiff, Appellee,

v.

SPACEKEY COMPONENTS, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. Magistrate Judge]

Before

Thompson and Kayatta, Circuit Judges,
and Casper,* District Judge.

Jeffrey C. Spear, with whom Orr & Reno, P.A. was on brief, for appellant.
Daniel E. Will, with whom Jonathan M. Shirley and Devine, Millimet & Branch, P.A. were on brief, for appellee.

May 9, 2014

---

* Of the district of Massachusetts, sitting by designation.

**CASPER, District Judge**.  Appellee BAE Systems Information and Electronics Systems Integration, Inc. ("BAE") alleges that Appellant SpaceKey Components, Inc. ("SpaceKey") wrongfully withheld payment for RH1280B field-programmable gate array ("FPGA")s, which are semiconductor integrated circuits that perform certain logic functions and which are often used in satellites and other space equipment.  The district court granted summary judgment in favor of BAE.  For the reasons given below, after de novo review, we affirm.

## I.  Facts & Background

### A.

BAE is a Delaware corporation with its corporate office in Nashua, New Hampshire.  BAE manufactures and distributes specialized products for use in the defense, security and aerospace industries.  SpaceKey is a Virginia corporation with its principal place of business in Virginia.

In 2004, BAE entered into an agreement with SpaceKey (the "Consultant Agreement") under which SpaceKey agreed to identify buyers for BAE products in Connecticut, Maryland and Virginia.  The Consultant Agreement provides that it "shall be construed in accordance with the laws of the State of New Hampshire."  The Consultant Agreement incorporated by reference BAE's terms of sale ("TOS"), which BAE would update periodically over time.  In November 2006, BAE updated its TOS (the "11/06 TOS").  Under the

-2-

11/06 TOS, the parties agreed that SpaceKey's only remedies for breach of warranty would be the repair or replacement of nonconforming goods, or the refund of the purchase price at BAE's option.

In 2007, BAE acquired the rights to manufacture and sell a particular FPGA known as the RH1280, which BAE designated RH1280B to signify BAE's version of the product. The flight versions of the RH1280B were intended for use in space and, therefore, required a certain degree of radiation resistance (measured in "rads"). BAE warranted that "[t]he RH1280B offers a total dose radiation-hardness in excess of 300K rads (Si), the standard for a majority of applications . . . ." (the "300 krad specification").

In August 2007, BAE provided new terms of sale (the "8/07 TOS"). The only relevant difference between the 11/06 TOS and the 8/07 TOS is that the available remedies for breach of warranty under the 8/07 TOS included credit, repair and replacement. Under the 8/07 TOS, payment was not due until the earlier of thirty days from the date of invoice or upon delivery.

Operating under the terms of the Consultant Agreement, SpaceKey found customers for RH1280B FPGAs in India and Russia to whom SpaceKey communicated BAE's warranty. Beginning in January 2008, SpaceKey submitted purchase orders for RH1280B FPGAs, including Purchase Order SKC12508(C), the order at issue in this case. By May 2009, BAE had informed SpaceKey that the RH1280Bs

would not meet the 300 krad specification. As BAE forewarned, the RH1280Bs failed to meet the 300 krad specification; some of the goods had a radiation resistance of 50 krad, while others had a radiation resistance of 100 krad. Nevertheless, SpaceKey accepted delivery of the FPGAs, and although it asserts that it did so under the assumption that BAE would later reduce the price, SpaceKey was able to resell the goods to its customers.

BAE sent SpaceKey seven invoices arising out of SpaceKey's purchase orders. Although SpaceKey paid some invoices, it refused to pay an outstanding balance of $1,800,000 as compensation for accepting nonconforming goods and BAE's breach of warranty. After SpaceKey announced its intention to withhold payment, BAE terminated the Consultant Agreement on December 10, 2009, effective January 31, 2010.

## B.

BAE sued SpaceKey on August 20, 2010. After BAE amended its complaint, seeking multiple declaratory judgments and asserting claims of an account stated, breach of contract, quantum meruit and unjust enrichment, SpaceKey filed counterclaims on December 14, 2010, asserting claims of breach of contract, misrepresentation, breach of warranty and a violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. 358-A:2. Whereas BAE alleged in part that SpaceKey was in breach for failing to pay for the goods it had purchased, SpaceKey alleged, inter alia, that BAE

-4-

improperly terminated the Consultant Agreement, misrepresented the performance characteristics of the RH1280B and its delivery schedule and breached its express warranty regarding the performance characteristics of the RH1280B.

On July 1, 2011, BAE moved for summary judgment on SpaceKey's counterclaims for misrepresentation (Count III) and breach of express warranty (Count IV), contending that SpaceKey could not succeed on its counterclaims because it had not pursued its limited remedies under the 11/06 TOS (i.e., return of the goods for repair or replacement or for a refund of the purchase price). Three weeks later, on July 22, 2011, BAE filed a second motion for summary judgment, contending that it was entitled to judgment on its breach of contract claim and claim for an account stated because SpaceKey had withheld payment on the FPGAs and although it was entitled to limited remedies for breach of warranty under the 11/06 TOS, by withholding payment, sought a remedy of either set-off or recoupment, for which the parties had not contracted.[1] On October 24, 2011, the district court denied the first motion, ruling that the remedy limitations did not preclude SpaceKey's claims for nonconformity and alleged breach of warranty by BAE, and the second motion in relevant part, concluding that if SpaceKey

---

[1] As to the account stated claim, BAE asserted that SpaceKey never disputed that it owed $1,851,757 for the goods BAE delivered and was, therefore, entitled to judgment as a matter of law.

-5-

prevailed on its breach of warranty counterclaim, it could provide a legal excuse to defeat BAE's breach of contract claim.

On October 17, 2011, BAE filed a third motion for summary judgment on Counts I and II of its amended complaint and Counts I and II of SpaceKey's counterclaims, asserting that its termination of the Consultant Agreement was proper. The district court granted this motion in part, concluding that BAE was entitled to summary judgment on Counts I and II of its amended complaint and Count I of SpaceKey's counterclaims, but not on Count II of SpaceKey's counterclaims.

In each of these three motions for summary judgment, BAE asserted that the 11/06 TOS applied to its purchase orders. In SpaceKey's opposition to BAE's third motion for summary judgment, SpaceKey disputed BAE's initial contention that the 11/06 TOS were applicable, and asserted instead that the 8/07 TOS were applicable. On October 5, 2012, BAE filed a motion for leave to file a fourth motion for summary judgment. In this motion, BAE acceded to SpaceKey's assertion regarding the 8/07 TOS. In addition, BAE argued that because the 8/07 TOS required SpaceKey to avail itself of the limited remedies for breach of warranty within sixty days, SpaceKey's warranty claims were precluded.

Although the district court initially denied BAE's motion for leave, on January 11, 2013, on the eve of trial, it issued an order to show cause why a proposed judgment in BAE's favor should

not enter on BAE's breach of contract claim and on SpaceKey's breach of warranty counterclaim.  In this order, the district court reasoned that the 8/07 TOS had limited SpaceKey's remedies for breach of warranty to credit, repair or replacement exercised within sixty days of delivery, and although neither repair or replacement were feasible on the undisputed facts, the credit remedy had not failed of its essential purpose under the New Hampshire iteration of the Uniform Commercial Code ("UCC"), N.H. Rev. Stat. Ann. 382-A:2-719.  After briefing, the district court granted summary judgment in BAE's favor on April 22, 2013, and denied SpaceKey's motion for reconsideration on July 19, 2013. This appeal followed.

## II.  Analysis

We review the district court's grant of summary judgment de novo, Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 30 (1st Cir. 2012), drawing all reasonable inferences in the nonmovant's favor, Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 468 (1st Cir. 2010).  Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  McArdle v. Town of Dracut, 732 F.3d 29, 32 (1st Cir. 2013) (internal quotation marks omitted).

A.

SpaceKey first contends that summary judgment was inappropriate because there is a dispute over which TOS governed

Purchase Order SKC12508(C). Although BAE asserts that the 8/07 TOS apply, SpaceKey contends that the 11/06 TOS apply. Both parties represented to the district court that the 11/06 TOS governed the purchase order until SpaceKey disputed BAE's contention that the 11/06 TOS applied, positing that "SKC12508 was subject to the August 2007 TOS Revision," in its opposition to BAE's third motion for summary judgment. In its fourth motion for summary judgment, BAE did not take issue with SpaceKey's assertion that the 8/07 TOS applied. In response to the district court's show cause order, SpaceKey did not object to the district court's characterization of which TOS applied. That is, although SpaceKey enumerated a number of factual disputes that precluded entry of judgment in BAE's favor in its response to the show cause order, SpaceKey did not dispute the district court's agreement with SpaceKey's position that the 8/07 TOS applied to the transaction at issue here, nor did it dispute the same in its motion for reconsideration. Accordingly, there was never any genuine dispute of material fact over which TOS applied to Purchase Order SKC12508(C).

SpaceKey argues that BAE's representations throughout the litigation that the 11/06 TOS applied to SKC12508(C) should bar BAE's contrary position on appeal. But SpaceKey does not dispute that BAE revised the terms of sale in August 2007. Notwithstanding SpaceKey's attempt to decline BAE's concession and attribute to it a position it no longer holds, there is simply no dispute as to

-8-

which terms of sale governed the transaction. The 08/07 TOS applied.

Even if there were a colorable dispute over which terms of sale governed Purchase Order SKC12508(C), SpaceKey would have waived this argument on appeal. "It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). Although it is true that SpaceKey, like BAE, assumed that the 11/06 TOS applied to Purchase Order SKC12508(C) until SpaceKey asserted the applicability of the 8/07 TOS during the litigation below, there is nothing in the record to suggest that, once the later terms of sale were introduced, SpaceKey ever asserted that the earlier TOS applied. Accordingly, it cannot even be said that SpaceKey "mention[ed] a possible argument in the most skeletal way, leaving the court to do counsel's work, create ossature for the argument, and put flesh on its bones." Harriman v. Hancock Cnty., 627 F.3d 22, 28 (1st Cir. 2010) (citation omitted) (internal quotation marks omitted).

B.

Having resolved that the 8/07 TOS governs, the heart of this dispute is whether the limited remedies for breach of warranty outlined in the 8/07 TOS "fail[ed] of their essential purpose" under UCC § 2-719(2). The UCC, including as adopted by New Hampshire, permits parties to commercial transactions to modify or

limit the remedies available for breach of warranty.  <u>Xerox Corp.</u> v. <u>Hawkes</u>, 475 A.2d 7, 11 (N.H. 1984) (citing N.H. Rev. Stat. Ann. § 382-A:2-719(1)).   However, where the remedy "fails of its essential purpose," the aggrieved party may seek relief "as provided in this chapter," UCC § 2-719(2), meaning that if in any case, the aggrieved party cannot as a practical matter avail itself of the benefit of the enumerated remedy, "it is entitled to the full array of remedies provided by the UCC."  <u>Figgie Intern., Inc.</u> v. <u>Destilería Serralés, Inc.</u>, 190 F.3d 252, 255 (4th Cir. 1999).[2] Here, the 8/07 TOS limited SpaceKey's remedies for breach of BAE's warranty (that the FPGAs would conform to their published specifications) to "return . . . for credit, repair or replacement at BAE SYSTEMS' sole option."  Yet it is undisputed that SpaceKey preemptively withheld payment in response to BAE's alleged breach of warranty.  That is, SpaceKey appeared to claim damages under either UCC § 2-714 or § 2-717, remedies outside the 8/07 TOS.  The parties dispute whether this remedy should be considered "set-off" or "recoupment."  Whatever the appropriate terminology, it is

---

[2]   Although New Hampshire law applies to this matter, where there was no New Hampshire case directly on point, we have looked for guidance from interpretations of identical provisions of the UCC in other jurisdictions.  <u>Trans-Spec Truck Serv., Inc.</u> v. <u>Caterpillar, Inc.</u>, 524 F.3d 315, 323 (1st Cir. 2008) (looking to cases interpreting the UCC in other jurisdictions where the Massachusetts Supreme Judicial Court had not addressed the proper application of a particular code provision); <u>see also</u> <u>Welsh</u> v. <u>TEX-MACH, Inc.</u>, No. 08-11401-DPW, 2009 WL 2922955, at *5 n.5 (D. Mass. Aug. 28, 2009).

apparent that it was SpaceKey's intent to claim a remedy outside the scope of the 8/07 TOS. Accordingly, unless the enumerated limited remedies in the 8/07 failed of their essential purpose, SpaceKey was in breach.

As the district court stated, "[p]lainly, the essential purpose of a repair or replacement remedy is to put conforming goods in the hands of the buyer. A repair remedy fails of its essential purpose . . . when 'the seller is unwilling or unable to repair the defective goods within a reasonable period of time.'" The parties assume, as the district court did, that both repair and replacement were impracticable as BAE was not in a position to provide SpaceKey with conforming goods. Our review thus focuses on whether the "credit" remedy failed of its essential purpose.

Our inquiry into whether a remedy has failed of its essential purpose takes place in two steps: first we must identify the essential purpose of the limited remedy, and second, we must determine "whether the remedy in fact failed to accomplish such purpose." Cooley v. Big Horn Harvestore Sys., Inc., 813 P.2d 736, 744 (Colo. 1991) (citing Milgard Tempering, Inc. v. Selas Corp., 902 F.2d 703 (9th Cir. 1990); Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081 (3d Cir. 1980)).[3] In determining

_____

[3] We note that other courts have employed somewhat different approaches in determining whether a remedy fails of its essential purpose. See Dowty Commc'ns Inc. v. Novatel Computer Sys. Corp., 817 F. Supp. 581, 585-86 (D. Md. 1992) ("There are at least two ways of determining whether a particular set of facts deems a

-11-

whether remedies fail of their essential purpose, courts also consider whether the "circumstances of the transaction, including the seller's breach, cause the [limitation] to be inconsistent with the intent and reasonable commercial expectations of the parties." Kearney & Trecker Corp. v. Master Engraving Co., Inc., 527 A.2d 429, 438 (N.J. 1987).

BAE argues that, under these circumstances, the credit remedy operated as a refund. BAE points to the payment terms of the 8/07 TOS, which provided that SpaceKey was not obligated to pay until thirty days from the date of invoice or upon delivery and posits that SpaceKey knew of the non-conformities of the RH1280Bs prior to either operative date. Accordingly, BAE argues, SpaceKey could have invoked the credit remedy before it even paid, rendering the credit, for all intents and purposes, a refund. Indeed, the district court devoted pages of its opinion to an explanation of why the "refund" remedy did not fail of its essential purpose,

---

restricted contractual remedy to fail of its essential purpose. The first is to assess the potential breaches envisioned by the parties when they agreed to limit their remedies and then to compare the actual breach to the parties' initial expectations. If the expectations and reality are materially the same, the remedial limitation should be enforced. . . . The second, more common approach is to evaluate the compliance of the party in breach with its limited remedial responsibilities. If the party violating the agreement fails to compensate the innocent party in the limited manner provided for by the contract, the remedy has failed of its essential purpose"), aff'd sub nom., Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390 (4th Cir. 1994). Even so, were we to apply these alternative formulations, we would not reach a different conclusion.

rather than focusing exclusively on cases that discussed only "credits." Ultimately, recognizing that under many circumstances, credits will not operate as refunds, we need not reach the issue of whether the credit remedy operated as a refund here. For the reasons that follow, we conclude that there are other bases to affirm the district court's determination that the credit remedy did not fail of its essential purpose.

SpaceKey argues that the limited remedies did fail, because the purpose of a credit remedy is not to give the aggrieved party the value of the bargain, but rather to provide the buyer with conforming goods (i.e., the "benefit of the bargain"). Its principal support for this principle of law is Arias/Root Eng'g v. Cincinnati Milacron Mktg. Co., 945 F.2d 408 (9th Cir. 1991) (unpublished), which states that:

> The essential purpose of a refund remedy does not differ from the essential purpose of a remedy that provides for either refund or replacement. Both are intended to ensure that the buyer will receive a conforming product within a reasonable time, whether the seller repairs the nonconforming product, replaces it, or refunds the purchase price so that the buyer can obtain a conforming product elsewhere.

Id. at *4. Arias/Root, a refund case, clearly does not apply to this case, in which the contract provided no refund remedy for the type of breach at issue. Rather, the subject of our inquiry here is a credit remedy, the purpose of which cannot have been to enable the purchase of conforming goods elsewhere. That the parties knew

-13-

that conforming goods did not even exist elsewhere makes acutely clear the conclusion that they could not have shared an expectation that the remedy would enable SpaceKey to procure such goods if BAE could not supply them. Rather, the parties' clear expectation, as made manifest in their contract, was that SpaceKey could return the goods within a limited period of time and claim a credit, or could keep the goods and pay (i.e., receiving the value of the bargain).[4] That those options did not provide for SpaceKey the full range of remedies that might otherwise have been available is simply the result of the fact that commercial parties retain the freedom to limit by agreement their available remedies in the event of a breach. See James J. White and Robert S. Summers, Uniform Commercial Code, § 13:1 (6th ed. 2010).

SpaceKey argues that the limited remedies did fail because it did not foresee that BAE would produce goods that were usable and functional, albeit at a reduced level of radiation-hardness. But the TOS explicitly provided for limited remedies in the event that BAE delivered non-conforming goods, and SpaceKey offers no reason why the details of the FPGAs' nonconformance cause BAE's breach to

---

[4]   To the extent that SpaceKey argues that BAE should be liable for consequential damages resulting from discounts SpaceKey was forced to give its customers, the 8/07 TOS clearly and conspicuously waived consequential damages. Waiver of consequential damages are considered valid unless unconscionable. Hydraform Prods. Corp. v. Am. Steel & Aluminum Corp., 498 A.2d 339, 343 (N.H. 1985) (Souter, J.) (quoting N.H. Rev. Stat. Ann. 382-A:2-719)(3)).

fall outside that agreement. Moreover, to the extent that SpaceKey's argument relies on an assertion that its choice about whether to keep the FPGAs was made more difficult by the fact that they were not entirely unsuited to the purpose for which they were intended, we fail to see why SpaceKey should stand in a stronger position than the one in which it would have found itself had the delivered items been less useful.[5]

Moreover, we note that this is not a case where SpaceKey was without options. SpaceKey could have returned the items and sought a credit, as the TOS prescribed. Had SpaceKey complied with the contractually-mandated procedure for obtaining a remedy, a court evaluating a later dispute would likely have found itself in a position to consider whether that remedy had been devoid of practical utility. Alternatively, of course, SpaceKey was entitled to pursue precisely the course it in fact pursued: keeping the items and selling them. But having charted the latter course, SpaceKey stands on weak ground when it asks us simply to assume that the option of returning the FPGAs was futile. This is so particularly where the contract as a whole makes clear that the parties never intended that BAE would become liable to SpaceKey for consequential damages flowing from any breach.

---

[5] Any difficulties resulting as to a delay in delivery also did not cause the remedies to fail of their essential purpose, where SpaceKey accepted the goods and was able to sell them to their customers regardless of any delay.

Here, having failed to invoke any of the limited remedies, SpaceKey gave BAE no opportunity to make good on same. In general, an aggrieved buyer must provide the seller with a reasonable opportunity to carry out the limited remedy before the buyer can successfully argue failure of essential purpose. White and Summers § 13:20 (citing Trinity Indus. Inc. v. McKinnon Bridge, Co., 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001); Bishop Logging Co. v. John Deere Indus. Equip. Co., 455 S.E.2d 183, 191 (S.C. Ct. App. 1995)) (further citations omitted). Such a rule is consistent with purposes of the UCC, which aims to defer to the parties' contractual procedural limitations. See UCC § 1-102(3) (providing that UCC "may be varied by agreement"); id. § 1-103(a)(2) (noting that "underlying purposes and polices" of UCC include "continued expansion of commercial practices through . . . agreement of the parties"); see also Von Gohren v. Pac. Nat'l Bank, 505 P.2d 467, 474 (Wash. 1973) (noting UCC policy of avoiding "expensive and delaying litigation").[6] SpaceKey argues that it cannot have forfeited its right to argue that the remedy failed of its essential purpose because "the law does not require a useless act." McGranahan v. Standard Const. Co., 131 A.2d 631, 632 (N.H. 1957). That is, it is SpaceKey's position that invocation of the credit remedy would have

---

    [6] SpaceKey also raised the issue of whether the district court erred in concluding that SpaceKey's status as a reseller precluded its ability to recover warranty damages. As we have determined that the credit remedy did not fail of its essential purpose, we need not reach this issue.

been futile.  However, as discussed above, the very attributes that SpaceKey suggests would have made the act useless are attributes that were necessarily within the contemplation of the parties when they entered into the governing agreement.  At that time, as at all times relevant to this case, BAE was the only supplier of RH1280B FPGAs.  When SpaceKey assented to the TOS, it could not have expected that the credit remedy--as distinct from replacement and from repair--would be a mechanism for obtaining conforming goods. SpaceKey's protestation that a credit request would not have resulted in the delivery of such goods cannot, in these circumstances, render such a request futile.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's decision granting summary judgment in BAE's favor.