451 A.2d 239

**WEST AMERICAN INSURANCE COMPANY, Appellant,**

**v.**

**Debra Ann OBERDING, Ford Motor Company, a corporation, Phil Fitts Ford, Incorporated, a corporation.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Aug. 15, 1983.

56

George M. Weis, Pittsburgh, for appellant.

Louis M. Tarasi, Jr., Pittsburgh, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

This appeal concerns the availability of duplicate benefits to an insured under the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] Specifically, the appellant, West American Insurance Company, hereinafter WAI, seeks a determi-

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 et seq. (Supp.1981–1982), hereinafter the No-Fault Act.

nation with reference to its rights of subrogation to the damages flowing from a products liability suit where duplicate benefits are sought by the insured which arise out of the accident on which basic loss benefits have been paid. For the reasons which follow, we will affirm the declaratory judgment of the trial court which did not permit subrogation.

On June 18, 1976, appellee, Debra Oberding, was seriously injured when her automobile, a Ford Pinto, was driven into from the rear by another vehicle. Oberding was insured by WAI which has paid basic loss benefits to her under the No-Fault Act in excess of $60,000. Ms. Oberding subsequently filed suit against the manufacturer of her car, Ford Motor Company, Inc., hereinafter Ford, the seller and servicer of her vehicle, Phil Fitts Ford, hereinafter Fitts Ford, and the operator of the automobile which struck her, Mrs. Debra Lynn Simmons. In the court below, WAI filed an action seeking declaratory relief regarding the existence of and their right to subrogation against any recovery Ms. Oberding may realize against Ford, or Fitts Ford.

The insurer's right to subrogation is found in Section 111 of the No-Fault Act. It provides in pertinent part:

(a) Reimbursement and subrogation.—

(1) Except as provided in paragraphs (2) and (3) of this subsection, an obligor:

(A) does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation to the proceeds of a victim's claim for a relief or to a victim's cause of action for noneconomic detriment; and

(B) may not directly or indirectly contract for any right or reimbursement based upon a determination of fault from any other obligor not acting as a reinsurer for no-fault benefits which it has paid or is obliged to pay as a result of injury to a victim.

(2) Whenever an individual who receives or is entitled to receive no-fault benefits for an injury has a claim or cause of action against any other person causing the

injury as based upon a determination of fault, the obligor is subrogated to the rights of the claimant only for:

(A) elements of damage compensated for by security for the payment of no-fault benefits in excess of the minimum basic loss benefits required under this act are recoverable; and

(B) the obligor has paid or become obligated to pay accrued or future no-fault benefits in excess of the minimum basic loss benefits required under this act. (3) Nothing in this subsection shall preclude any person supplying or providing products, services, or accommodations from contracting or otherwise providing for a right of reimbursement to any basic restoration benefits for allowable expense.[2]

Section 301 of the No-Fault Act abolishes tort liability, with certain exceptions. The exceptions found at 301(a)(2) and 301(a)(5) are at the center of the controversy herein. Sections 301(a)(2) and (a)(5) provide:

(a) Partial abolition—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

.    .    .    .    .

(2) A person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles remains liable for injury arising out of a defect in such motor vehicle which is caused or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

.    .    .    .    .

(5) A person remains liable for damages for noneconomic detriment if the accident results in:

**2.** We note the appellee's correct observation: The act proscribes subrogation for basic loss benefits with certain limited exceptions. All parties concede the aforementioned exceptions in Paragraphs (2) and (3) allowing subrogation do not apply to the instant case.

(A) death or serious and permanent injury; or

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one-hundred dollars ($100) is in excess of seven hundred fifty dollars ($750). For purposes of this subclause, the reasonable value of hospital room and board shall be the amount determined by the Department of Health to be the average daily rate charged for a semi-private hospital room and board computed from such charges by all hospitals in the Commonwealth; or

(C) Medically determinable physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days; or

(D) injury which in whole or in part consists of cosmetic disfigurement which is permanent, irreparable and severe.

WAI characterizes section 301 as follows: "tort liability was preserved in five distinct situations. (§ 301). In a suit based upon the fifth situation (§ 301(a)(5)), the injured party was explicitly limited to noneconomic detriment [footnote omitted] and by clear negative implication in the other four situations (§ 301(a)(1), (2), (3), (4)) there were to be no limitations, i.e., the injured party could recover for both economic and noneconomic detriment." Appellant's brief at pages 10–11. WAI states further that § 111 does not restrict its subrogation rights suits under § 301 where damages are not limited to noneconomic detriment. To support this argument, WAI refers us to the Uniform Motor Vehicle Accident Reparation Act, a model act proposed by the Commissioners on Uniform State Laws in 1972. Specifically, WAI contends that § 111 was modeled after § 6 of the model act which in relevant part states:

(a) A reparation obligor does not have and may not directly or indirectly contract for a right of reimbursement from or subrogation to the proceeds of a claim for relief or cause of action for noneconomic detriment (section 5(A)(7)) of a recipient of basic or added reparation benefits.

WAI argues that § 6(a) of the model act clearly provides that a tort action shall only be applicable to a victim's cause of action for noneconomic detriment. Section 5 referred to in § 6(a) of the model act is similar to § 301 under the No-Fault Act. A comment following § 6 to the model act provides in part:

Under Section 5, there are substantial areas in which tort liability remains in effect for injury related to motor vehicle accidents. As to these possible tort recoveries, *it is desirable to prevent duplication of recovery by the insured person for the same elements of loss and to vest control of the right of recovery in the person having the real economic interest.*

To accomplish this result, Section 6 allocates the beneficial interests in and control over the remaining tort in related causes of action on claims between the injured person and the reparations obligor on the basis of the kind of loss for which recovery is sought. *Thus, subsection (a) deprives a reparations obligor of any right of subrogation or reimbursement from the proceeds of a claim or cause of action for noneconomic detriment because those kinds of loss are not compensable by reparations insurance.*

(Emphasis added.)

Section 111(a)(1)(A), however, does not, as WAI would have us hold, limit its proscription against subrogation to claims for noneconomic detriment, rather it quite plainly states in the disjunctive that an obligor

(A) does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation to the *proceeds of a victim's claim for relief or to a victim's cause of action for noneconomic detriment.*

(Emphasis added.) Thus, it would seem that subrogation is prohibited where the obligor seeks to do so against either a *"victim's claim for relief or . . . a victim's cause of action for noneconomic detriment."* While the writers of the Model Act may have believed it desirable to prevent duplicate recovery, the General Assembly appears to have prohibited subrogation in the instant case and therefore allowed double recovery.

WAI argues that § 111 is susceptible to a different and, it contends, a more logical reading. It essentially contends that § 111(a)(1)(A) was intended by the legislature to only apply to noneconomic detriment. WAI supports this assertion by directing us to a treatise on the No-Fault Act: The Pennsylvania No-Fault Motor Vehicle Insurance Act, Edited by David S. Shrager, Published 1978, Pennsylvania Trial Lawyers Association, wherein it is stated that "§ 111 of the No-Fault Act specifically provides that subrogation to a victim's claim for general damages for noneconomic detriment is prohibited." Id. at § 2:9. We are unable to determine that this statement is in any way inconsistent with what the trial court has said. Clearly, § 111(a)(1)(A) prohibits subrogation for noneconomic detriment. However, § 111(a)(1)(A) also prohibits subrogation for general claims for relief by victims.[3]

█ It is interesting, nevertheless, to pose the question raised by WAI. If § 111(a)(1)(A) does indeed provide two

**3.** WAI asks us to rewrite § 111(a)(1)(A) in the following manner:
(1) an obligor:
(A) does not have and may not contract, directly or indirectly, in whole or in part, for a right of reimbursement from or subrogation—to the proceeds of a victim's claim for relief or to a victim's cause of action—for noneconomic detriment; . . .
According to accepted rules of statutory construction, however, words and phrases are to be construed according to rules of grammar 1 Pa.C.S.A. § 1903. We cannot insert punctuation where the general assembly had none without changing the meaning of § 111(a)(1)(A). Although we are permitted to construe insurance statutes liberally, we are unable to hold that such a construance of § 111 would give effect to the No-Fault Act in a manner which would promote justice. 1 Pa.C.S.A. § 1928. See *Goodwin v. Hartford Life Insurance Company,* 359 F.Supp. 20 (W.D.Pa.1973), reversed, on other grounds, 491 F.2d 332 (3rd Cir. 1974).

provisions regarding subrogation rights, and if we agree they are (1) a proscription against such a subrogation to "the proceeds of a victim's claim for relief;" or (2) a proscription against such a subrogation to "a victim's cause of action for noneconomic detriment," does not the former completely swallow the latter, making it superfluous unless read such that both are restricted to noneconomic detriment. It would appear that the critical distinction lies in our understanding of the words "claim" and "cause of action" as used in § 111(a)(1)(A). In *Tiesler v. Martin Paint Stores Inc.,* 76 F.R.D. 640, 642 (E.D.Pa.1977) that court said:

> Whether Joseph Keller may be impleaded is controlled by the language of Federal Rule of Civil Procedure 14(a) which provides that a defendant may implead a person not party to the action "who is or may be liable to him for all or part of the plaintiff's claim against him." The use of the word "claim" in Rule 14 avoids the narrow concepts of "cause of action" and instead employs the idea of the claim as a group of operative facts giving occasion for judicial action. *Dery v. Wyer,* 265 F.2d 804, 807 (2nd Cir. 1959).

Thus, claim for relief encompasses a broader concept than cause of action. Accordingly, if we were to say that § 111(a)(1)(A) proscribes subrogation against claims for relief would we not include in claims for relief a cause of action for noneconomic detriment. This would make the "cause of action" prohibition superfluous. However, if we construe § 111(a)(1)(A), as WAI would have us do, to say that all subrogation rights are limited so as to now allow any proceeding against noneconomic detriment, we would nevertheless, not solve our difficulty, for a claim for relief would continue to include a cause of action. This interpretation is contrary to the principle that the legislature is not presumed to have intended the provisions of its enactments as mere surplusage. *Matter of Employees of Student Services,* 495 Pa. 42, 432 A.2d 189 (1981); *Commonwealth v. Driscoll,* 485 Pa. 99, 401 A.2d 312 (1979); *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977); *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963); *Turner v. May Corporation,* 285 Pa.Super.

241, 427 A.2d 203 (1981); *Commonwealth v. Hill,* 236 Pa.Super. 572, 346 A.2d 314 (1975); 1 Pa.C.S.A. § 1922(2). We are not, however, without guidance in this matter.

In *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975), our Supreme Court held that the No-Fault Act was constitutional. In so doing, it specifically discussed § 301(a)(2) and § 301(a)(5). The court found that § 301(a)(2) permits full tort liability because of the deterrent effect caused by product liability suits. Section 301(a)(5) was held to only allow an action for losses for non-economic detriment.[4] The parties herein agree that § 301(a)(2) permits an action for all damages which are proximately caused by the defective product.

■ WAI argues that the deterrent effect of an action permitted under § 301(a)(2) is not diminished if it is permitted to file for subrogation to that action. Clearly, this argument is appealing because the § 301(a)(2) defendant remains liable in entire part for damages. WAI asks only for the right to subrogate as to that portion of the damages which it has already paid the plaintiff for economic losses. Nevertheless, we are obliged to hold that subrogation is prohibited under § 111(a)(1). Simply put, § 301(a)(2) permits the insured to pursue the products liability "claim for relief." Thus, under § 111(a)(1) subrogation is barred.

4. Note however, the opinion of the court, however, was not clear. The lead opinion by Chief Justice Jones was joined in by no member of the court. Justice Roberts ,wrote a concurring opinion in which Justice Pomeroy joined in part. Justice Nix concurred in the result reached by Chief Justice Jones and wrote a separate opinion. Justices Eagen, O'Brien and Manderino dissented.

Chief Justice Jones discussed § 301(a)(2) as follows:

This subsection permits the retention of tort action in one instance of products liability. The subsection envisions three situations. First, where the vehicle is defective because of the act or omission of a repairman or manufacturer, *the victim may sue in tort for losses beyond the basic no-fault coverage....*

In the first situation, tort recovery is permitted to encourage the safe and proper design and repair of motor vehicles. Deterrence again serves as the rationale for upholding the distinction created. See R. Keeton and J. O'Connell, Basic Protection for the Traffic Victim, 247–49 (1965).

(Emphasis added) id., 464 Pa. at 405, 346 A.2d at 906.

Alternatively, WAI argues that § 301(a)(2) and § 301(a)(5) focus on the concept of fault and that as such the General Assembly did not intend to change the previous law under which insurance liability was determined by fault. Accordingly, the common law rules of subrogation must continue to apply. See *In re City of Pittsburgh,* 243 Pa. 392, 90 A. 329 (1914). We cannot agree with this contention.

In enacting the No-Fault Act, the General Assembly declared as its purpose:

*Purposes*—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.

40 P.S. § 1009.102(b). We must liberally construe the No-Fault Act in order to assure that its purpose is given effect. *Sheppard v. Old Republic Life Ins. Co.,* 21 Pa.Cmwlth. 360, 346 A.2d 383 (1975).

It is certain that the General Assembly intended to limit a tort action under § 301(a)(5) to damages for noneconomic detriment. It is clear also that the General Assembly did not so limit an action under § 301(a)(2). WAI argues that the absence of such a limitation indicates that the legislature intended to retain the common law of subrogation in products liability cases. We are not persuaded. It appears to us that the underlying purpose behind the No-Fault Act is to assure the swift and uniform payment of claims presented by persons under the act. It is apparent also that the purpose envisioned by our courts in products liabilities cases is to deter manufacturers from producing defective products. *Singer v. Sheppard,* 464 Pa. at 405, 346 A.2d at 906.

Thus, the law of products liability recognizes that:

Today ... a manufacturer ... is effectively the guarantor of his product's safety .... [A] manufacturer, by marketing and advertising his product, impliedly represents that it is safe for its intended use .... No societal interest is served by permitting the manufacturer to place

a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect. *Salvador v. Atlantic Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974). Accordingly, our Supreme Court has adopted the view that "risk of loss must be placed upon the supplier of the defective product without regard to fault . . . ." *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). In an "era of giant corporate structures" it is the consumer who must be protected.

> The realities of our economic society as it exists today force the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business.

Id., 480 Pa. at 553, 391 A.2d at 1023. This liability does not, however, place the manufacturer in the position of an insurer. Rather, liability here is absolute in the strictest sense. Here, the plaintiff need only prove the product was in some way defective. Wade, Strict Liability of Manufacturers, 19 S.W.L.T.J. 13 (1965). Accordingly, all consumers participate in a system wherein liability for defective products is placed upon the manufacturer and the cost of that liability is paid by all consumers through the pricing of goods. Thus, products liability law envisions a penalty extracted from manufacturers the cost of which is spread to consumers throughout the marketplace. Accordingly, if a manufacturer incurs too much liability for product defect, it may be obliged to increase its prices to pay for its mistakes and may potentially price itself out of competition should it incur substantial liability. By necessity, consumers are obliged to buy into this system.

█ We are unable to hold that the purposes envisioned in our products liability cases are inconsistent with those established under the No-Fault Act. Furthermore, we cannot hold that an insured is prohibited from recovering damages, where, as here, he has incurred the cost of procuring no-fault insurance and the cost inherent in our products liability cases. These costs are established quite separately, are intended for different purposes and are designed specifically

for those purposes. Simply stated, no-fault insurance payments are intended essentially to compensate an individual for injuries he has suffered in an automobile accident. Products liability damages are intended primarily to deter a manufacturer from producing a defective product. Both legal situations extract a cost from the consumer. Thus, we are convinced that the consumer is entitled to receive a benefit under both provisions of the No-Fault Act. *Saunders v. State Farm Ins. Co.,* 294 Pa.Super. 424, 440 A.2d 538 (1982).

Thus, it is apparent that the act does not prohibit all double recoveries. This understanding leads us to conclude that the General Assembly wrote § 111 with the intention of barring subrogation to a products liability claim. No other result can be reached when § 301(a)(2) is read. That section clearly permits an action for a products liability claim. The policies envisioned by the General Assembly under the No-Fault Act and those underpinning our products liability law encompass certain costs to the consumers of Pennsylvania.

In the instant case, the insured has paid for both no-fault insurance and for protection against defective products. We see no reason why she should not receive two recoveries under these circumstances. Id., 294 Pa.Superior Ct. at 425, 440 A.2d at 538. Accordingly, we affirm the order of the trial court.