## Bauman v. Nationwide Insurance Co.

*Mark B. Weber,* for plaintiff.
*Jay H. Karsch,* for defendant.

SOKOLOVE, *J.*, February 24, 1984—Plaintiff, Alan J. Bauman, commenced this suit by filing a complaint in assumpsit on or about July 14, 1982. On or about June 16, 1983, a panel of arbitrators under compulsory arbitration rules, Pa.R.C.P. 1301-1313, found in favor of plaintiff for medical expenses, lost wages, attorney fees and interest.

Pursuant to Pa.R.C.P. 1308, defendant filed an appeal from the award of the Board of Arbitrators, and the case was called before the undersigned without a jury. The facts were stipulated to by both parties and memoranda of law were filed in lieu of argument. The case is ready for disposition.

## FINDINGS OF FACT

1. Plaintiff, Alan J. Bauman, resides at Box 244, R.D. no. 4, Quakertown, Bucks County, Pa.

2. Defendant, Nationwide Insurance Companies, is a corporation licensed to transact the business of insurance in Pennsylvania with offices at 1000 Nationwide Drive, P.O. Box 2655, Harrisburg, Dauphin County, Pa, 17105.

3. Defendant issued to plaintiff an insurance policy in accordance with the provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §1009.100 et seq.

4. Said policy of insurance was in full force and effect on or about August 26, 1978.

5. On or about August 26, 1978, plaintiff, while operating his insured motor vehicle, was involved in an accident, which resulted in, inter alia, a fracture of plaintiff's arm.

6. As a result of this accident, plaintiff was treated by Dr. Carl A. Hansen, an Orthopedic Surgeon operating out of the Sellersville area.

7. On or about March 27, 1979, Dr. Hansen performed surgery on plaintiff, inserting a metal plate in plaintiff's arm.

8. At the time the plate was implanted, there was no reason for plaintiff to expect that it would be necessary to have it removed, as it was the type intended to be permanent.

9. On or about October 9, 1979, plaintiff was paid

his medical expenses pursuant to the No-fault coverage of his insurance policy.

10. Around February of 1982, plaintiff started experiencing pain in the injured arm.

11. At no time prior to February of 1982 did plaintiff know or have reason to know of the need for further surgery.

12. Plaintiff went back to Dr. Hansen and was told that the plate would have to be removed.

13. On or about May 4, 1982, plaintiff underwent further surgery to remove the plate.

14. As a result, plaintiff incurred medical expenses, including hospital, anesthesia and surgery, totaling $977.

15. As a further result, plaintiff suffered a loss of earnings in the amount of $468.29.

16. Following this additional treatment and surgery, plaintiff gave notice to defendant and submitted a bill to defendant, claiming the additional expenses incurred.

17. Defendant refused to pay plaintiff any additional sum of money claiming that 40 P.S. §1009.106(c)(1) of the Pennsylvania No-fault Act barred any claim presented more than two years after the last no-fault benefits had been paid.

18. This action was brought by plaintiff against Nationwide on or about July 14, 1982,* for recovery of medical expenses of $977, lost wages of $468.29, attorney fees of $1,253 and interest on the medical expenses and lost wages at the statutory rate of 18 percent per annum, to be calculated at the time of judgment.

---

*This was two years after the date of last payment, but not four years after the accident.

## DISCUSSION OF LAW

The question involved pertains to the interpretation and application of the No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 Pa. P.S. §1009.106(c)(1) which provides as follows:

"If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss *and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident,* or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits, other than survivor's benefits, by either the same or another claimant, may be commenced not later than two years after the last payment of benefits." (Emphasis added.)

Plaintiff contends that this section of the No-fault Act must be liberally construed and in accordance with interpretation of other statutes of limitations. Contrary to this, defendant contends that the language of the section is clear and unambiguous, and must be strictly construed, thereby precluding recovery.

In view of the facts of this case as well as a reading of all pertinent case law, we conclude that plaintiff is entitled to recovery.

Of the many recent cases dealing with the Statute of Limitations section of the No-fault Act, the case of Rigotti v. J.C. Penney Casualty Insurance Company, 13 D. & C. 3d 472 (1980), is the most similar on the facts.

In holding that Section 106(c)(1) of the No-fault Act was not a bar to a claim for further benefits in that case, the Rigotti court stated:

In construing Section 106(c)(1) we look to the case law construing other Statutes of Limitations of a seemingly mandatory nature. See 1 Pa. C.S.A. §1922(4).

The purpose of any Statute of Limitations is to expedite litigation in order to minimize the presentation of state claims which may be difficult to defend by virtue of the passage of time: Insurance Company of North America v. Carnaham, 446 Pa. 48, 284 A.2d 728 (1971). However, a Statute of Limitations is not intended to bar a claim which could not have been reasonably discovered at an earlier date: Acker v. Palena, 260 Pa. Super. 214, 393 A.2d 1230, 1232-3 (1978). Thus despite the seemingly mandatory language of the Statute of Limitations, exceptions to statutes of limitations have evolved as part of our case law: Barshady v. Schlosser, 226 Pa. Super. 260, 262, 313 A.2d 296, 298 (1973).

Defendant argues that an interpretation of Section 106(c)(1) is apparent from a strict reading of the entire section, with an emphasis on the contrasting language of the first sentence with the language of the second sentence. The legislature stated that in a situation where no-fault benefits have been paid, an action "may be commenced not later than two years after the last payment of benefits", and omitted the language relating to knowing that the loss was caused by the accident. Defendant argues that we strictly interpret such provision, without any regard for implied exceptions. This position is contradicted by consideration of the entire No-fault Act and the Legislature's express purpose in adopting this Act, which was to create "a low cost, comprehensive, and fair system" which uniformly would provide for "maximum feasible restoration" of all victims of motor vehicle accidents. 40 P.S. §1009.102; Tubner v. State Farm Mutual Auto-

mobile Insurance Co., 496 Pa. 215, 436 A.2d 621 (1981).

Strict application of the formula set up in §106(c)(1) of the Act would preclude plaintiff from recovering expenses caused by the automobile accident but not known of until two years after the last payment. Insurance statutes are not among those types of statutes designated by our Legislature as requiring strict interpretation. We must liberally construe the No-fault Act in order to assure that its purpose is given effect. See Goodwin v. Hartford Life Insurance Co., 359 F. Supp. 20 (1973) reversed on other grounds, 491 F.2d 332 (1974); West American Insurance Company v. Oberding, 305 Pa. Super. 55, 451 A.2d 239 (1982). Although the court cannot disregard the clear and unambiguous language of the No-fault Motor Vehicle Insurance Act, it must construe the statute with the recognition that the Legislature "does not intend a result that is absurd, impossible of execution or unreasonable." See Platts v. Government Employees Insurance Company, 301 Pa. Super. 379, 447 A.2d 1017 (1982); Pa. C.S.A. §1922(1) (1972). Cognizant of the remedial spirit of the No-fault Act, if a court is to err in ascertaining the intent of the Legislature in close or doubtful cases, it should err in favor of coverage for the insured. Crawford v. Allstate Insurance Co., 305 Pa. Super. 167, 451 A.2d 474 (1982). In liberally interpreting the statute, we conclude that even after earlier receipt of payment, the insured must be allowed the two years after his first knowledge that additional medical treatment is required. The language of Section 106(c)(1) shows no clear intent by the Legislature to alter the well-established rule of construction for seemingly mandatory statutes of limitations extending the limitation period for a plaintiff who neither knew or should

have known of the extent and the cause of the injury within the original limitation period, we apply this rule to construe Section 106(c)(1). Therefore, the prescribed statutory period does not begin to run until discovery of the injury is reasonably possible.

Defendant cites five cases supporting a strict interpretation: McGlade v. Ohio Casualty Insurance Co., 18 D. & C. 3d 676 (1980) aff'd by the Superior Court, per curiam on August 14, 1981, is substantially similar in fact and the court ruled that the two year limitation after payment should be applied literally. We do not feel compelled to follow this ruling in view of the existing circumstance involving the clearly acknowledged lack of scienter on the part of the plaintiff.

The other cases cited are distinguishable on this principal factual difference, i.e., that plaintiff's delay here was caused by the lack of knowledge that additional medical treatment would be required. In Platts, supra, the plaintiff delayed in instituting the action for no other reason than her own neglect.

In Pollace v. West American Insurance Co., 40 Bucks 199 (1982), Judge Garb did follow the literal interpretation of the No-fault provision stating that "clearly this section of the Act relating directly to time limitations upon actions works a complete bar to any claim made more than two years after the last benefits payment has been made *barring some disability in the claimant.*" (Emphasis added.) Unlike the instant case, there was no allegation of any legal disability relating to plaintiff in Pollace. In the present case, plaintiff argues that he was, in fact, literally under a legal disability of impossibility during the two years following the last payment of benefits from the defendant, as plaintiff lacked any capability to bring an action for expenses not yet incurred. Although the No-fault Act does not contain a legis-

latively drafted definition of the term "legal disability", Black's Law Dictionary, 5th Edition, defines "disability" as the "the want of legal capability to perform an act." See Salvado v. Prudential Property and Casualty Insurance Co., 287 Pa. Super. 304, 430 A.2d 298 (1981). Such disability tolls the statute of limitations as to permit the claim for additional benefits. In the case at bar, we conclude that plaintiff was disabled in that he lacked capability to bring the action. Neither Fidelibus v. State Automobile Insurance Association, Pa. Super. 461 A.2d 1309 (1983) nor Bewley v. Aetna Life & Casualty, 298 Pa. Superior Ct. 63, 444 A.2d 176 (1982) stand for the proposition that a plaintiff is barred by the No-fault statute of limitations when a disability exists so as to toll the statute.

Fidelibus, supra, at p. 1311, citing Salvado, states ". . . After the expiration of that period (of limitations), claims for additional benefits by persons under no legal disability were barred." Bewley, supra, ruled that the limitations period for filing a complaint for further work loss benefits under the No-fault Motor Vehicle Insurance Act commenced to run on the date of the last payment of benefits despite claimant's contention that such payment was made by mistake.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over this matter.

2. Plaintiff is entitled to recovery for medical expenses and loss of earnings expense totaling $1,445.29.

3. Plaintiff is entitled to the payment of 18 percent interest on the $1,445.29 calculated from July 14, 1982, the date of this complaint, to the date of the signing of this decision.

4. Plaintiff is not entitled to the award of attorney fees as delay in payment on the part of the insurer was not in bad faith.

For the foregoing reasons, we enter the following:

1. The decision is for plaintiff and against defendant in the sum of $1,445.29, plus interest at the rate of 18 percent per year from July 14, 1982.

2. In accordance with Pa.R.C.P. 1038(c), the prothonotary shall notify the attorneys for each of the parties of the date of filing of this decision.

3. Pursuant to Pa.R.C.P. 227.4, the prothonotary shall, upon praecipe, enter judgment on the decision if no motion for post-trial relief has been filed thereto (under Pa.R.C.P. 227.1) within ten days after notice of filing of this decision.