## Miller v. Chowdhry

*Jerry I. Meyers*, for plaintiffs.
*Stephen B. Spolar*, for intervenor.

WETTICK, *A.J.*, May 30, 1985—Plaintiff-husband was an employee of Allegheny Ludlum Steel Corporation. In January 1982, he was admitted to Allegheny Valley Hospital for back surgery to correct a medical condition that was not work-related. During the operation, plaintiff sustained a severe and permanent neurological injury that resulted in permanent disability.

As a salaried employee of Allegheny Ludlum, plaintiff was covered by Allegheny Ludlum's long-term disability plan under which plaintiff received his full salary for approximately eight months after the hospitalization and 65 percent of his salary thereafter. Payments will apparently continue until plaintiff reaches retirement age.

In these proceedings, plaintiff has instituted a professional negligence action against the physician who performed the surgery and the hospital in which the surgery was performed. The damages he seeks include lost wages and impairment of earning power.

Allegheny Ludlum has filed a motion to intervene pursuant to Pa.R.C.P. 2327(4).[1] The basis for the petition is Allegheny Ludlum's claim that it has a right of subrogation to any recovery or settlement that plaintiff obtains in these proceedings. Plaintiff opposes the intervention on the ground that Allegheny Ludlum is not entitled to any of the proceeds that plaintiff may recover, including the portion of a recovery covering lost wages and impairment of earning power.

The contract under which Allegheny Ludlum is obligated to make the disability payments for non-work-related injuries does not provide for Allegheny Ludlum to be subrogated to the employee's interests. Thus, the issue raised by Allegheny Ludlum's motion to intervene is whether in the absence of a contractual provision for subrogation, an employer which provides disability benefits for non-work-related injuries as an employment benefit has a right of subrogation to any proceeds recovered by the employee against a tort-feasor. We conclude that the employer has no right to share in the employee's recovery against the tort-feasor.

In support of its claim for subrogation, Allegheny Ludlum cites cases in which courts conferred a right of subrogation on employers who were mandated by statute to pay medical expenses and/or disability compensation. See, e.g., *Topelski v. Universal South Side Autos Inc.*, 407 Pa. 339, 180 A.2d 414 (1962); *Potoczny v. Valejo,* 170 Pa. Super. 377, 85 A.2d 675 (1952). But in the present case, Allegheny Ludlum had no legal obligation to provide disability insurance for a disability that was not job-related.

---

1. The motion contains factual allegations and is properly verified and, thus, will be treated as a petition to intervene.

Plaintiff contends that the disability insurance was a fringe benefit that served as a substitute for higher compensation. Allegheny Ludlum, on the other hand, contends that these fringe benefits were gratuitously provided. In either case, no legal or moral obligation compelled Allegheny Ludlum to provide these fringe benefits. Consequently, the subrogation doctrine may not be invoked because of the absence of an obligation to provide such benefits.

"Subrogation is an equitable doctrine involving the right of legal substitution and may take place with or without contractual agreement between the parties. *First National Bank of Ashley v. Reily,* 165 Pa. Super. 168, 67 A.2d 679 (1949). It is granted as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, *Topelski v. Universal South Side Autos Inc.,* 407 Pa. 339, 180 A.2d 414 (1962), and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another. *Anderson v. Greenville Borough,* 442 Pa. 11, 273 A.2d 512 (1971). The doctrine, however, will not be invoked to protect mere volunteers. *Beck v. Beiter,* 146 Pa. Super. 114, 22 A.2d 90 (1941).

'A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay . . . pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interest, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.'

*Home Owners' Loan Corp. v. Crouse,* 151 Pa. Super. 259, 262, 30 A.2d 330, 331 (1943), quoting, 60 C.J. §27 at 716." *Dominski v. Garrett,* 276 Pa. Super. 18, 419 A.2d 73, 76-7 (1980).

Also see *Michigan Millers Mutual Insurance Company v. United States Fidelity and Guaranty Corp.,* 306 Pa. Super. 88, 452 A.2d 16, 17 (1982):

"A right to contribution may be enforced either at law or in equity. *Greenwald v. Weinberg,* 102 Pa. Super. 485, 157 Atl. 351 (1932). Although it has been stated time and time again that subrogation will not be decreed in favor of a mere volunteer, who, without moral or legal duty to do so, pays the debt of another, we, in this case, look closely at those two words, 'moral' and 'legal' duty. As a surety here, Michigan Millers Mutual Insurance Company was indeed under both a moral (as insurer) and legal (as verdict loser) duty to the McQuades due to the outcome of the jury trial. This has been a recognized principle of law dating from the year 1894 where at 163 Pa. 609, 30 Atl. 222, in the case of *Campbell v. Foster Home Association,* it was stated:

'Subrogation will not be decreed in favor of a mere volunteer who *without any duty,* moral or otherwise pays the debt of another. It will not arise in favor of a stranger but only in favor of the party, who on some sort of compulsion, discharges a demand against a common debtor.' (emphasis supplied)."

Allegheny Ludlum seeks to avoid the case law holding that equitable subrogation (subrogation that is not based on contract) applies only where one has satisfied the obligation of another by reason of a moral or legal duty by contending that a right of subrogation arises out of a public policy against a double recovery for the same losses. But Pennsylvania has no public policy against double recoveries unless the duplicate payments satisfy the same obli-

gation. *Anderson v. Borough of Greenville*, 442 Pa. 11, 273 A.2d 512 (1971).

In the case of *West American Insurance Company v. Oberding*, 305 Pa. Super. 55, 451 A.2d 239 (1982), a driver was injured in an automobile acci-. dent. The no-fault carrier paid to the driver basic-loss benefits in excess of $60,000 under the No-fault Act for medical expenses and wage losses that she incurred. Subsequently, the driver filed an action against the car manufacturer and dealer in which she sought to recover all losses resulting from the accident, including medical expenses and wage losses.[2] Her no-fault carrier instituted an action seeking declaratory relief regarding its right to subrogation to any proceeds that the driver recovered from the dealer or manufacturer. The court held that the language of the No-fault Act prohibited subrogation and that it should be construed as written. It rejected the no-fault carrier's argument that such a construction would be inconsistent with legislative intent because as a matter of public policy the Legislature would have been opposed to a double recovery. The court concluded that the insured had directly paid for no-fault insurance and had indirectly paid for protection against defective products so there was no reason why she should not receive two recoveries.

"Furthermore, we cannot hold that an insured is prohibited from recovering damages, where, as here, he has incurred the cost of procuring no-fault insurance and the cost inherent in our products liability cases. These costs are established quite separately, are intended for different purposes and are

2. Section 301 of the Pennsylvania No-fault Act (40 P.S. §1009.301(a) (2)) preserved tort liability for lawsuits against businesses that manufacture and service motor vehicles.

designed specifically for those purposes. Simply stated, no-fault insurance payments are intended essentially to compensate an individual for injuries he has suffered in an automobile accident. Products liability damages are intended primarily to deter a manufacturer from producing a defective product. Both legal situations extract a cost from the consumer. Thus, we are convinced that the consumer is entitled to receive a benefit under both provisions to the No-fault Act. *Saunders v. State Farm Insurance Co.*, 294 Pa. Super. 424, 440 A.2d 538 (1982)." *West American, supra.*

Similarly, in the present case, there is no reason why plaintiff should not receive two recoveries. The obligations of Allegheny Ludlum as an employer providing employment benefits to plaintiff are unrelated to the obligations of the medical service providers providing medical care to plaintiff. Plaintiff earned the disability benefits as a portion of his wage. Plaintiff also paid for protection against medical negligence as a purchaser of medical services. Thus, any other result would provide a windfall to the employer or the medical service providers.

For these reasons, we enter the following

## ORDER OF COURT

On this May 30, 1985, it is hereby ordered that the motion of Allegheny Ludlum Steel Corporation to intervene is denied.