524 A.2d 908

**Frederick DICKERSON, Appellant,**

v.

**BRIND TRUCK LEASING, and Keenan Motors, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 3, 1986.

Filed April 16, 1987.

William C. Kauffman, Philadelphia, for appellant.

Diane A. Dichter, Philadelphia, for Brind Truck Leasing, appellee.

Before CIRILLO, President Judge, and MONTEMURO and KELLY, JJ.

MONTEMURO, Judge:

Appellant Frederick Dickerson challenges a grant of summary judgment by the Philadelphia Court of Common Pleas. Because Mr. Dickerson failed to bring his personal injury claims within the applicable two-year period of limitations, 42 Pa.C.S.A. § 5524, we affirm.

The parties agree that Mr. Dickerson suffered injuries after he fell from the back of a truck while attempting to close the truck's rear door. The parties also agree that this mishap occurred on December 3, 1979. Appellee Brind Truck Leasing does not appear to dispute that it leased the truck in question to Mr. Dickerson's employer, Fuller Wholesale Meats, Inc.

Mr. Dickerson commenced this action on December 8, 1981 by filing a praecipe for a writ of summons. The summons named Brind Truck Leasing (Brind) and Keenan Motors as defendants. Keenan had sold the ill-fated truck to Brind. In his complaint, Mr. Dickerson alleged that he fell while "in the act of loading and/or unloading the truck" and that he did not discover the resulting injuries until "on or after December 9, 1979." Mr. Dickerson divided his complaint into two counts, one "in assumpsit" for breach of implied and express warranties and the other "in trespass" for negligence and for distribution of an allegedly "defective" truck. Brind responded with an answer and new matter and a motion for judgment on the pleadings. In its motion, Brind contended that the two-year statute of limitations barred Mr. Dickerson's action.[1] The trial court denied judgment on the pleadings.

Nonetheless, on November 30, 1983, Mr. Dickerson, now represented by new counsel, sought to amend his complaint to include "allegations ... required to be pleaded, in accordance with the Pennsylvania No-fault Motor Vehicle Insurance Act." The trial court denied the petition to amend, but gave Mr. Dickerson the right to file another petition that "specifically sets forth the proposed amendments to the complaint." Mr. Dickerson neither filed another petition nor challenged the denial of the first one. On January 30, 1985, Brind again raised the two-year statute of limitations,

---

**1.** The relevant statute requires a party to commence within two years any action "to recover damages for injuries to the person ... caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S.A. § 5524(2). We cannot determine whether Brind wanted the court to apply this provision to the breach of warranty claim as well as the negligence and strict liability claims.

this time in a motion for summary judgment. The trial court granted the motion by order of June 21, 1984, and this timely appeal followed.

In its opinion, the trial court found that Mr. Dickerson's cause of action accrued on December 3, 1979, the date of the accident. The court therefore concluded that the two-year statute of limitations for personal injury actions had elapsed before Mr. Dickerson instituted suit on December 8, 1981. Moreover, because appellee Brind had only leased, rather than sold its truck to Fuller Wholesale Meats, Inc., the court refused to apply the Uniform Commercial Code's four-year period of limitations, 13 Pa.C.S.A. § 2725, to Mr. Dickerson's breach of warranty claim. On appeal, Mr. Dickerson raises two arguments against the holding of the trial court. First, he contends that the now-repealed Pennsylvania No-fault Motor Vehicle Insurance Act [2] governs his tort claims and that the two-year period of limitations therefore did not begin to run until he knew or should have known that he had crossed one of the No-fault "thresholds." Second, he maintains that Article Two of the Uniform Commercial Code, 13 Pa.C.S.A. § 2101 *et seq.*, governs his breach of warranty claims and that the trial court therefore should have applied the Code's four-year period of limitations. We will address these arguments in turn.

Section 301 of the No-fault Act, which was in effect at the time of the mishap in this case, abolished tort liability for injuries that arose "out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.301(a). This section retained tort liability, however, in certain enumerated circumstances. In particular, a tortfeasor remained liable for "non-economic" injuries that exceeded one of the four "thresholds" set forth in Section 301(a)(5), 40 P.S. § 1009.-301(a)(5). Our supreme court recognized in *Bond v. Gallen*, 503 Pa. 286, 469 A.2d 556 (1983), that a cause of action for such "non-economic" injuries does not accrue until the victim knows or reasonably should know that his or her

2. No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, No. 179, *repealed by* Act of February 12, 1984, P.L. 26, No. 11, § 8(a), eff. October 1, 1984.

injuries meet a No-fault threshold. The court thus established a variant of the "discovery rule" for tort actions governed by the No-fault Act. Generally, the cause of action accrues, and the period of limitations begins to run, on the date of the accident. If on the date of the accident, however, the victim is reasonably unable to discover that he or she has crossed a No-fault "threshold," the cause of action will not then accrue.

Mr. Dickerson argues that the accident in this case "arose out of the maintenance or use of a motor vehicle" and that the discovery rule of *Bond v. Gallen* therefore applies to his cause of action. We disagree. Even assuming that Mr. Dickerson suffered injuries while maintaining or using a motor vehicle, he failed to plead a cause of action under the No-fault Act. This court will not plead the cause for him. We acknowledge that Pa.R.C.P. 1019(a) requires the plaintiff to provide only a "concise and summary" statement of the "material facts" that underlie the plaintiff's claims. Nevertheless, the complaint must notify the defendant of the plaintiff's claims by stating the grounds upon which those claims rest and by identifying the issues in dispute. *See Cassell v. Shellenberger*, 356 Pa.Super. 101, 514 A.2d 163 (1986); *Alpha Tau Omega Fraternity v. University of Pennsylvania*, 318 Pa.Super. 293, 464 A.2d 1349 (1983); *Weiss v. Equibank*, 313 Pa.Super. 446, 460 A.2d 271 (1983); *Smith v. Brown*, 283 Pa.Super. 116, 423 A.2d 743 (1980). This notice enables the defendant to prepare a proper and responsive defense. *See Cassell v. Shellenberger, supra; Weiss v. Equibank, supra.* It also promotes the speedy and inexpensive resolution of disputes. The complaint in this case failed to notify Brind that Mr. Dickerson was asserting a claim under the No-fault Act. In fact, Mr. Dickerson appears to have deliberately avoided pleading such a claim. He alleged in paragraph 5 of his complaint that he was "in the act of loading and/or unloading the truck" at the time of the accident. Section 103 of the Act expressly excludes "conduct in the course of loading or unloading a motor vehicle" from the definition of

"maintenance or use of a motor vehicle." 40 P.S. § 1009.-103.[3] Brind therefore could not have known from reading the complaint that it would have to defend an action governed by No-fault.[4] For the past five years, Brind has focused its entire defense against an apparently ordinary common-law tort claim. The No-fault Act and *Bond v. Gallen*[5] played no part. We decline to change the course of the litigation this far down stream merely because Mr. Dickerson raised No-fault in his answer to Brind's motion for summary judgment. Mr. Dickerson could have attempted to amend his complaint to state a claim under the No-fault Act, but he failed to do so.

Even if Mr. Dickerson somehow did plead a cause of action under the Act, he cannot take advantage of the *Bond v. Gallen* discovery rule. Section 301(a)(2) of the Act provides that

[a] person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles remains liable for injury arising out of a defect in such motor vehicle which is caused or not corrected by an act or omission in the course of such business, other than

3. Section 103 of the No-fault Act provides in part that "[m]aintenance or use of a motor vehicle does not include . . . conduct in the course of loading or unloading a motor vehicle *unless the conduct occurs while occupying, entering into, or alighting from it.*" 40 P.S. § 1009.-103 (emphasis supplied). Mr. Dickerson now alleges that he was standing on the back of the truck at the time of the accident. He therefore argues that he was "occupying" a motor vehicle within the meaning of Section 103. This allegation and argument, however, appear for the first time in Mr. Dickerson's memorandum of law in opposition to Brind's motion for summary judgment. In the complaint, Mr. Dickerson alleged only that he was loading or unloading the truck at the time of the accident.

4. Mr. Dickerson himself admits in his answer to the motion for summary judgment that his former counsel "failed to present plaintiff's No-fault claim." Although Mr. Dickerson's present counsel petitioned to amend the defective complaint, counsel for unexplained reasons failed to furnish the information that the court requested concerning the contents of the proposed amendments.

5. We decided *Bond* on October 16, 1981, *see Bond v. Gallen*, 292 Pa.Super. 207, 437 A.2d 7 (1981) (*en banc*), and the supreme court affirmed on December 30, 1983, *see Bond v. Gallen*, 503 Pa. 286, 469 A.2d 556 (1983).

a defect in a motor vehicle which is operated by such business.

40 P.S. § 1009.301(a)(2). This broad exception to the abolition of tort liability enables the motor vehicle accident victim to recover in tort the full measure of his or her loss against persons who manufacture, repair, service or otherwise maintain motor vehicles, regardless of the No-fault monetary thresholds. *See West American Ins. Co. v. Oberding,* 305 Pa.Super. 55, 451 A.2d 239 (1982). The General Assembly thus sought to deter the manufacture and distribution of dangerously defective products by preserving without qualification the right to bring product liability actions. *See Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975); *West American Ins. Co. v. Oberding, supra.* Because Mr. Dickerson seeks to hold Brind liable for leasing a defective truck,[6] his claim falls squarely within the category of actions defined by Section 301(a)(2). His injuries therefore did not have to exceed one of the No-fault thresholds before he could file suit. In *Bond v. Gallen,* of course, our supreme court addressed only those cases to which the thresholds applied. The court sought to avoid the "Catch–22" that would have arisen if the period of limitations began to run on tort claims that had not yet ripened under the No-fault Act. *See Bond v. Gallen, supra* 503 Pa. at 289, 469 A.2d at 558. In the present case, on the other hand, Mr. Dickerson's product liability claim arose on December 3, 1979, the day the alleged defect in the truck caused him to fall.

■ Mr. Dickerson also argues that the trial court should have applied the Uniform Commercial Code's four-year period of limitations, 13 Pa.C.S.A. § 2725(a),[7] to his breach of

---

6. All suppliers of defective products, including lessors, are potentially liable for defects in the product when the defect injures the ultimate user. *See Nath v. National Equipment Leasing Corp.,* 497 Pa. 126, 439 A.2d 633 (1981); *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977); *Burch v. Sears, Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615 (1983).

7. At the time of Mr. Dickerson's accident, the original version of the Uniform Commercial Code was in effect in this Commonwealth, *see* Act of April 6, 1953, P.L. 3, No. 1, *repealed by* Act of November 1,

warranty claim against Brind. Although his argument on appeal is unclear, Mr. Dickerson apparently believes that Keenan Motors made express and implied warranties when it sold the truck in question to Brind. These warranties, according to Mr. Dickerson "followed" the truck "through the stream of commerce" and in the process somehow bound not only Keenan, the seller, but also Brind, the buyer. Mr. Dickerson therefore maintains that he, as third-party beneficiary of the warranties, can hold Brind liable for breach under the Commercial Code. We must disagree. A seller's warranties will not bind the buyer in an action for breach brought by an injured third party beneficiary. Mr. Dickerson thus cannot take advantage of the Commercial Code's four-year period of limitations.

We recognize that the concept of "privity" has no place in modern sales warranty law and that a seller's warranties protect a broad class of beneficiaries other than the buyer. *See Williams v. West Penn Power Co.*, 502 Pa. 557, 467 A.2d 811 (1983); *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974). The warranties that Keenan gave to Brind, if any, very well could have traveled "through the stream of commerce" to protect Mr. Dickerson. If so, then Keenan, not Brind, must account for the breach. Express and implied warranties under the Commercial Code are of course *seller's* warranties. A buyer, as such, does not warrant the quality, merchantibility or fitness of the goods he or she purchases. To hold otherwise would offend the plain meaning and obvious design of the Code's warranty provisions, 13 Pa.C.S.A. §§ 2313 to 2318.[8]

1970, P.L. 255, No. 86, 58, eff. January 1, 1980. Although the current version of the Code contains some minor revisions, the new limitations provision, 13 Pa.C.S.A. § 2725(a), mirrors the former provision almost exactly. We therefore will cite to the current, consolidated statute version of this provision to avoid confusion.

8. The codified versions of these provisions are almost identical to those which were in effect at the time of Mr. Dickerson's accident, *see* Act of April 6, 1953, P.L. 3, No. 1; §§ 2–313 to 2–318, *repealed by* Act of November 1, 1979, P.L. 255, No. 86, § 8, eff. January 1, 1980. Again we cite to the current version to avoid confusion.

We need not consider whether Brind made warranties of its own when it leased the truck to Mr. Dickerson's employer. The trial court reasoned that Article Two of the Uniform Commercial Code applies by its own terms to "sales" only and that a "lease" is not a "sale" within the meaning of the Code.[9] The court therefore concluded that the Code, with its four-year period of limitations, does not govern Mr. Dickerson's breach of warranty claim against Brind. In his brief on appeal, Mr. Dickerson appears to agree that the lease alone would not support a breach of warranty claim against Brind under the Code. His argument in favor of applying the Code rests entirely upon the express or implied warranties that might have arisen when Keenan sold the truck to Brind. We have already disposed of this reasoning, and we will not construct an alternative argument that the appellant has failed to pursue on appeal, *see Giant Markets, Inc. v. Sigma Marketing Systems, Inc.*, 313 Pa. Super. 115, 459 A.2d 765 (1983).

For the foregoing reasons, we affirm the order of the trial court granting summary judgment in favor of appellee, Brind Truck Leasing.

Order affirmed.

CIRILLO, President Judge, files a concurring opinion.

CIRILLO, President Judge, concurring:

I concur in the result reached by the majority. I agree with my learned colleague that Mr. Dickerson may not take advantage of the discovery rule recognized by the *Bond* Court. His cause of action for distribution of a defective product is covered by 40 P.S. § 1009.301(a)(2). The period

---

9. The Code defines "sale" as "the passing of title from the seller to the buyer for a price." 13 Pa.C.S.A. § 2106(a). We note, however, that some courts have examined the realities of the transaction to determine whether the purported "lease" is actually a "sale." *See, e.g., Barco Auto Leasing Corp. v. PSI Cosmetics, Inc.*, 125 Misc.2d 68, 478 N.Y.S.2d 505 (N.Y.Civ.Ct.1984); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F.Supp. 738 (D.N.J.1979). Other courts have determined outright that Article 2 of the Uniform Commercial Code applies to leases as such. *See, e.g., Xerox Corp. v. Hawkes*, 124 N.H. 610, 475 A.2d 7 (1984). *See generally* Anno., 4 A.L.R. 4th 85 (1981).

of limitations on the plaintiff's claim began to run when he was injured. The statute was not tolled until Dickerson reached the no-fault threshold. Therefore, his claim was barred by the statute of limitations. Because this issue is dispositive of the trespass claim, I believe that any further discussion concerning difficult questions of statutory interpretation is unwise and unnecessary.

Mr. Dickerson's claim for breach of warranty may likewise be disposed of in a more restrictive manner. It is unnecessary for us to determine whether a "lease" constitutes a "sale" under the Pennsylvania version of the Uniform Commercial Code. On appeal, Dickerson has argued that he is a third party beneficiary of the warranties given by Keenan to Brind. However, as my colleague aptly notes, any warranty which might exist binds only Keenan, the seller, not Brind, the buyer. Because this appeal is from Brind's motion for summary judgment, any discussion of Keenan's liability is irrelevant dicta. Therefore, we have no call to reach the novel issue as to whether a lease is equivalent to a sale in Pennsylvania under the warranty provisions of the U.C.C.

Accordingly, I concur in the result.