## Werntz v. General Accident Insurance Co.

*Soren P. West,* for plaintiff.
*James K. Thomas III,* for defendant.

PEREZOUS, *J.,* October 19, 1988 — This case arises out of an accident involving three vehicles. Robert Werntz, in one vehicle, was proceeding northbound on Route 441, a two-lane blacktop highway. Margaret Shank, in another vehicle, was proceeding southbound and crossed the center lane into the northbound lane where her vehicle was struck on the passenger side by Mr. Werntz's vehicle. Margaret Shank died instantly. At the same time thereafter, perhaps only a few seconds, Daniel Good, who was traveling northbound in his van, collided with the Werntz vehicle which was stopped in his lane because of the accident with the Shank vehicle.

Initially Robert and Susan Werntz brought an automobile negligence action against the Margaret Shank estate and Daniel Good filed at no. 1986-851, in the Court of Common Pleas of Lancaster County. The action against the Shank estate has been settled for Shank's policy limits in the amount of $50,000. Since the Werntzes' damages were in excess of the settlement amount, they then made a claim for underinsured motorist benefits form their insurance carrier, General Accident Insurance Company. General Accident did not honor the claim, contending that it was premature since peti-

tioners had not yet exhausted their claim against co-defendant Daniel Good and his insurance carrier.

When General Accident Insurance Company refused to proceed to arbitration pursuant to the terms of their insurance policy, on petition of Robert and Susan Werntz, the court of common pleas ordered it to proceed to arbitration.

Thereafter, General Accident filed a complaint for declaratory judgment requesting the court find that Robert and Susan Werntz were not entitled to underinsurance benefits until they had exhausted their remedies against Daniel Good. The Werntzes answered, referring the court to its determination on the petiton to appoint an arbitrator, and the court, per Judge Michael J. Perezous, dismissed the complaint with prejudice by order dated November 18, 1987. This order was affirmed by the Pennsylvania Superior Court on October 12, 1988, in General Accident's appeal to that court.

The underinsured motorists claim then proceeded to arbitration. In their decision the arbitrators reasoned that language in the Werntzes' insurance policy required the Werntzes, as a condition precedent to the recovery of benefits, to exhaust any claim they had against Good. Therefore, since the claim against Good had not been exhausted the Werntzes may not recover benefits from their underinsurance coverage. The arbitrators relied on *Rocca v. Pennsylvania General Insurance Company,* 358 Pa. Super. 67, 516 A.2d 772 (1986). The Werntzes appealed the decision of the board of arbitrators to this court.

The insurance contract is subject to the Uniform Arbitration Act of 1980 (42 Pa.C.S. §7301 et seq.) and under section 7302(d)(2) a court may modify or correct an arbitration if the decision of the arbitra-

tors is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment. *Selected Risks Insurance Company v. Thompson,* 363 Pa. Super. 34, 36, 525 A.2d 411, 412 (1987).

The applicable language of the subject policy is as follows:

### *"Insuring Agreement"*

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of bodily injury:

"(1) Sustained by a covered person; and

"(2) Caused by an accident.

"The owners' or operators' liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle or underinsured motor vehicle. We will pay damages under this coverage arising out of an accident with an underinsured motor vehicle only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment or settlement."

The area of contention focuses on the last sentence of the quoted paragraph. This court must decide whether the panel of arbitrators misconstrued that sentence.

General Accident advances two arguments to defeat the petition for review. The first argument focuses on the plain meaning of the sentence in question. That sentence has two clauses. The first clause, "We will pay damages under this coverage arising out of an accident with an underinsured motor vehicle . . .," describes the Werntzes' situation since the Werntzes were involved in one acci-

dent with an underinsured motor vehicle. General Accident also contends that the second clause, "[o]nly after the limits of liability under any applicable bodily injury liability bond or policies have been exhausted by payment of judgments or settlements," means that *any* bond or policies applicable to all parties to the incident, Werntz, Shank, and Good, must be exhausted before the Werntzes can recover under General Accident's underinsured motorists coverage.

This court does not agree with either of General Accident's positions.

The language of the clause in question is clear. The insured must exhaust any applicable bodily injury liability bonds or policies arising from *an* accident with *an*[1] underinsured motor vehicle. Stated another way, if an insured has exhausted all of one uninsured motor vehicle's coverage, the insured may recover benefits form the insured's own underinsurance policy.

The clause does not state that an insured may recover "[o]nly after the limits of liability under any applicable bodily injury bonds or policies which insure *any and all parties to an accident* have been exhausted by payment of judgments or settlements." If General Accident had wanted an insured to exhaust any and all policies of parties to an accident, General Accident would or should have included the italicized phrase or a similar phrase in its policy language. Since it did not, this court assumes it intended to be bound by the existing policy language.

---

1. The fourth edition of Black's Law Dictionary defines the word "an" as "equivalent to 'one' . . . seldom used used to denote plurality."

Webster's New World Dictionary of the American Language (1979) defines the word "an" as "one."

However, even if the sentence in question is not clear in its meaning, the rules of insurance policy construction of ambiguous terms and phrases are firmly established:

"When we undertake to interpret a policy of insurance, as is true in interpreting other contracts as well, our goal is to 'ascertain the intent of the parties as mainifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.'" *Votedian v. General Accident Fire and Life Insurance Co.*, 330 Pa. Super. 13, 16-7, 478 A.2d 1324, 1326 (1984), quoting from *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983). Therefore, by following the rules of insurance policy construction, the sentence in question as a matter of law must be construed against General Accident.

Genearal Accident cites *Hoffman v. Shelby Mutual Insurance Company*, 10 Carbon L. J. 58, affirmed 361 Pa. Super. 639, 517 A.2d 1368 (1986), as authority for its plain-meaning argument. Hoffman was the injured party in *Hoffman* whereas Houser was the defendant/tort-feasor. Hoffman settled for $3,000 less than Houser's maximum liability coverage and then attempted to recover benefits under his underinsurance party. The applicable wording in Hoffman's policy is identical to the sentence in question in the case sub judice. The *Hoffman* court ruled that Hoffman could not recover because he had not exhausted the limits of the underinsured motorist's coverage. However, the

facts are different in this case because the Werntzes exhausted the coverage of *an* underinsured motorist, Shank.

General Accident quotes *Hoffman* to the effect that underinsured motorist's coverage, "[i]s to provide excess coverage for accident victims, not an alternative coverage." The Werntzes have exhausted the underinsured motorist's coverage. Hence, the Werntzes are seeking excess coverage above Shank's policy limit. Therefore, *Hoffman* supports the Werntzes' right to recover benefits rather than supporting General Accident's plain-meaning argument.

In its second argument General Accident cites *Rocca v. Pennsylvania General Insurance Co.,* 315 Pa. Super. 67, 516 A.2d 772 (1986), and *Snyder v. Nationwide Insurance Company,* 373 Pa. Super. 294, 541 A.2d 19 (1988) that all claims against the underinsured motorists *and* any other motorists must be exhausted before the Werntzes may recover benefits. This court interprets *Rocca* and *Snyder* as deciding the issue of whether an arbitrator may hear a claim for benefits if all of a policy's conditions precedent to recovery of benefits have not been satisfied. In addition, *Rocca* and *Snyder* stand for the proposition that an arbitrator may decide whether all the insurance policy's conditions precedent to recovery have been satisfied. Under our reading of *Rocca* and *Snyder* we do not think these cases are apposite because they do not address the issue in this case which is whether the claim against Good falls within those policies which must be exhausted before the Werntzes may recover benefits form their underinsurance carrier.

The Werntzes argue that the decision of the arbitrators was contrary to the Motor Vehicle Financial Responsibility Law (75 Pa.C.S. §1701 et seq.)

which governs underinsured motor vehicle insurance policies. In *Tallman v. Aetna Casualty and Surety Company,* 372 Pa. Super. 593, 539 A.2d 1354 (1988), our Superior Court held that the MVFRL provided a liberal compensatory intent for an insured to recover benefits. This holding continued a line of cases which have interpreted the legislative intent and public policy behind the various incarnations of Pennsylvania's motor vehicle insurance law.[2]

This court believes that the liberal compensatory intent of the legislature is not advanced by denying or delaying underinsured benefits to the Werntzes. The Werntzes have injuries which have not been compensated. Their policy with General Accident requires General Accident to pay the Wentzes' benefits. The MVFRL has been construed to have a liberal compensatory intent.

Since General Accident's policy is governed by and complies with the intent of the MVFRL, the Werntzes should receive the underinsurance benefits they contracted and paid for and as expeditiously as possible. They should not have to exhaust all aspects of any other claims they may have.[3]

2. The Uninsured Motorists Act of August 14, 1963, P.L. 909 (40 P.S. §2000 et seq.), as interpreted by *Harleysville Mutual Casualty Company v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), found that to achieve the legislative intent of providing protection to innocent victims of irresponsible drivers, the statute should be construed liberally.

The Pennsylvania No-fault Act, 10 P.S. §1009, 101 et seq., as interpreted by *West American Insurance Company v. Oberding,* 305 Pa. Super. 55, 451 A.2d 239 (1982), found that the No-fault Act must be liberally construed in order to assure that its purpose of establishing a system of prompt and adequate loss benefits from motor vehicle accident victims is given effect.

3. For an excellent discussion of the rationale behind the

General Accident is protected by being subrogated to their rights. The theory of economic disadvantage demonstrates that, as between these two parties, General Accident can better afford to await the resolution of the claim of its insured against the underinsured vehicle.

Accordingly, we enter the following

## ORDER

And now, October 19, 1988, upon consideration of the petiton for review of Robert J. Werntz and Susan M. Werntz, the answer of respondent, General Accident Insurance Company, together with legal briefs filed by the parties, it is hereby ordered and directed that the decision of the panel of arbitritors is reversed and the case is remanded to the panel for an assessment of petitoner's damages.

---

*prompt reparation* of the underinsurance claimant, see *Johnson v. American Family Mutual Insurance Co.*, 413 N.W. 2d 172 (Minn. App. 1987) at 177 where the following language appears:

"Not only does this result encourage settlement and afford the insured the initial control and prompt payment of his claim, but a *contrary result would effectively nullify underinsurance coverage in accidents involving two or more drivers* one of whom is more at fault in causing the injuries." (emphasis supplied)